Good morning, Your Honor. May it please the Court, my name is Tara Hovland, appearing on behalf of the appellant Dino Kyzar. I would like to reserve two minutes for rebuttal. There is one issue before the Court today. It's whether the evidence was sufficient to support Mr. Kyzar's conviction for conspiracy to commit a deadly or dangerous assault by a prisoner. More specifically, whether the evidence that Mr. Kyzar was overheard talking to fellow inmates about finding one of them a knife was sufficient to prove the two essential elements of conspiracy to commit the deadly assault where no mention of the assault was made. Does he have to be an essential part of it in order to be convicted of conspiracy? The two essential elements of conspiracy are that he intended to aid or promote the planned assault and that he agreed that someone would commit the planned assault. There was no mention that Mr. Kyzar even knew there was an assault afoot. All the evidence points to is that Mr. Kyzar was trying to help Mr. Cropper get a knife, not why. Didn't he say something to him about the fact that how much time will you be facing? Are you sure you want to do this? He did say that, which is still relevant to just getting him a knife, which is also criminal activity. That's a felony to promote prison contraband. So everything that Dino said to Mr. Cropper supports conspiracy to promote prison contraband, not conspiracy to commit an assault. He could be saying the same thing to Mr. Cropper. Are you sure you want me to get you a knife? This is going to get you into trouble. The only part of that that's a little dubious is that he already had a knife. Right. And it's interesting that when Mr. Cropper said to Mr. Kyzar, I want the good one, Mr. Kyzar said, what do you mean you've got the good one? So Mr. Kyzar didn't even know that Mr. Cropper's knife had just been confiscated. That's how little he knew about what Cropper was doing. All he did was show up at Cropper's cell and got him a knife like he's done in the past. This is a prison system where there are knives buried all over the yard. People are letting inmates in and out. But that whole set of facts somewhat cuts against the notion that when he said are you sure you want to do this, that he was talking about the knife, just having a knife. Exactly. No, I'm saying it cuts against your point, because if that's all he meant when everybody had knives and this guy had had a knife before, why would he have made that comment? As far as he knew, the guy already had a knife. Right. So therefore, why is he saying are you sure you want to do this? I think he's just saying are you sure you want me to get you a knife? Well, and wasn't he just put on lockdown because of the fact that they had gone through his cell and had found contraband? Right. But there was no evidence that Mr. Kyzar knew that. And when Mr. Kyzar said what do you mean, you've got it, then that's evidence that Mr. Kyzar didn't know that his knife had just been taken. All he knew was that Cropper wanted a knife. I mean, there's essentially no evidence that Kyzar knew about the prior altercation. Right. Or knew about a plan. Exactly. Except this comment about are you sure you want to do this and the fact that he went like this. Right. Well, they're talking through a solid door with a 5-inch long window. And so I can imagine it must be hard to hear through the door. The guy's saying he wants a knife, so he's trying to be demonstrative. It doesn't he never said because I'm going to stab somebody with a knife. I mean, they're just talking about the knife. He didn't want to go yelling out that he wanted a knife. So, therefore, he says I want another. He didn't even say the word knife, as I remember. Right. He just says I want the good one. Right. So he's trying to avoid saying the word knife. Right. If you say the word knife, someone's going to say the word knife. So, I mean, it's certainly on the edge. And the question is, given the fact that it's on the edge and this is an Ithaca case, what do we do with it? Well, there are two ways to look at it. There is an argument that can be made for de novo review. Harrington v. Richter obviously says that a state court ruling, even if it's a postcard denial, is a ruling on the merits. However, Johnson v. Williams says there are limited times in which it's also de novo. And one of those times is where it's clear that the state court inadvertently missed the Federal claim. And I think a very good argument can be made in this case that that's exactly what happened. Mr. Kaiser, in his PCR, said to the state court, look, my due process rights were violated under the Fifth and the Fourteenth Amendment. And he mentions this Arizona Supreme Court case of Ivanchuk. He also says that he believes Ivanchuk establishes new law of conspiracy, which it doesn't. It clarifies the law, but it definitely helps Mr. Kaiser. And in his argument, he says, look, the state convicted me, but they didn't prove the two elements that I intended to aid the assault or that I even agreed with anybody that there would be an assault. So he makes a very clear insufficiency of the evidence claim and cites to the Fifth and Fourteenth Amendment and the due process clause. When the court addresses that claim, all it says is Mr. Kaiser wants us to reverse his conviction based on Ivanchuk. Ivanchuk is an opposite. So they only address the state court aspect of the claim and not the Federal aspect. I think under that standard, this Court can look at this case de novo instead of under the double deferential standard. Whether that helps or not, it does on one prong. We believe we win under both prongs anyway, because even if you were to look at that state court ruling as whether it's unreasonable application of Jackson and Winship, it clearly is, but even under just a Jackson prong, viewing the evidence in the light most favorable to the state, you still have no evidence that Deno knew anything about this assault. And you can't convict somebody of conspiracy just because they're conspiring to do any general felony here to get the knife. They have to be conspiring for that specific felony. I'm sorry. Ginsburg. You have reasonable inferences that can be drawn from the evidence as well. And all of those inferences go in favor of the State as well. So if it's a reasonable inference that the knife was being sought for an assault, why wouldn't that defeat your argument under Jackson? I don't believe that it is a reasonable inference, because this is a situation where everybody is giving knives to everybody all the time. Well, but here there was quite a bit of trouble that went to get this knife and then to make sure that he got it. Can we draw inferences from that? Or rather not us, but couldn't, first of all, the jury and the other courts? It didn't seem very difficult to get the knife. They go out in the yard. Kaiser didn't go to a lot of trouble. Right. Kaiser had one guy to go get some particular knife that had been buried a few days before, and, in fact, he never got that knife. Right. He got a knife from another inmate or showed him where another knife was. And Kaiser had nothing to do with that. Exactly. So the real question, and one has to build into all this beyond a reasonable doubt. That standard, i.e., it has to be a reasonable person, would have found it beyond a reasonable doubt. Right. Just a reasonable person would have found it. You know, I don't know. So a doubly deferential standard, I mean, if we don't accept your argument that de novo review applies, we have the AEDPA deferential standard, and then we have the Jackson deferential standard. So it's very hard to surmount. It is. And we're mindful of that. However, as this Court quoted the United States Supreme Court, deference does not imply abandonment or abdication of the judicial review. And that was in 1H from this Court in 2005 when they reversed an insufficiency of the evidence claim under AEDPA, the double deferential standard, for a murder conviction. And they cited the U.S. Supreme Court, Miller v. Cockerell, saying that deference does not imply abandonment or abdication of judicial review. In 2005, the Supreme Court has been emphatic, particularly with this circuit, regarding the standard for AEDPA review. Would you agree with that? I would agree with that. It's a very, very difficult standard. This is a very unusual case, though. This is a case, usually we walk up and we have a handful of convictions. It's somewhat rare that you have mixed verdicts. And it's more rare still that you have an acquittal on a count which has identical elements to the count that you're arguing insufficiency of evidence on. I actually thought that there was a pretty good explanation for why somebody could conclude, could acquit on the other two claims and not on this one, if because of this very peculiar fact that the gun that ended up being supplied was not the gun, I mean, the knife was not the knife that Kaiser was trying to help him get. So in terms of whether he supplied a knife or whether he, I forget, but the other two counts seemed to have to link him to the knife that actually showed up, and he wasn't linked to that knife. Right. So therefore, I mean, it wouldn't be difficult if you imagine a scenario where he had a conversation with Crotter, is that his name?  Crotter, and said, you know, I'm going to help you get a knife so you can assault so-and-so. I understand that's not the evidence. Right. But he had that conversation. I'm going to go help. My plan is to help you find a knife to go help, to go help, to go assault this guy, and he then went and did what he did, but it turned out that that knife never actually materialized. That would be grounds for a conviction, right, on the conspiracy? Right, yes. And that's the missing element. So the point is there's actually not an inconsistency. Well, it is because in this case there was no evidence that he knew about the assault. I understand that. Right. But the acquittals are not inconsistent with the conspiracy conviction. If you had the scenario that I'm describing, you would have a conspiracy conviction, but quite sensibly not a conviction on the other two counts because the knife that they got was not the knife. That's true for count three but not count two, because count two only involved the assault, not the knife itself. And count two, one of the elements in the disjunctive was that he intended to aid or agreed to intend to aid the assault, and the jury said no, he didn't. And those are the exact two elements that he's arguing about in the conspiracy. So if you look at the count two, just in the reply brief, page 10, it explains it, that the exact elements that he is concerned about are the ones that he was acquitted of. And he just wants the Court to see that, basically, to consider that it was a close case and the jury had a problem with that exact same thing that he's been beating this drum on since the beginning of time. I would like to reserve my remaining time for rebuttal. We don't actually have any remaining time, but we'll give you one minute. Thank you. Oh, thank you. You're in the red. You're in the red. May it please the Court. Counsel, David Simpson from the Arizona Attorney General's Office, on behalf of the Respondents. The district court's judgment should be affirmed in this case because the State Court reasonably determined that the evidence was sufficient to support Petitioner's conviction. So I'll, unless the Court wants otherwise, I'll start with discussing the AEDPA standard of review. So, of course, AEDPA review. We know the AEDPA standard of review. I'd rather hear about the evidence. Oh, hear about the evidence itself? Certainly, Your Honor. So I think the evidence in this case can kind of best be described as follows. An angry prisoner asked for a knife while making a stabbing motion. Petitioner gave him a knife or tried to give him a knife. And within hours, that angry prisoner stabbed somebody. I think that evidence is sort of on its face. If he hadn't, you would still have the same crime, right? I'm sorry, Your Honor. If he hadn't stabbed anybody, you would still have the same crime. That's correct, Your Honor. That's correct. And the discussion that you had earlier about the difference between accomplice and conspiracy I think is correct, that the jury here could have reasonably concluded, I think, that because the knife that Kisar tried to get, tried to procure was not the same knife that was used in the stabbing, that he could have, it could have acquitted him of being an accomplice. There is, in fact, no evidence that Kisar knew about the altercation, earlier altercation, knew who the likely intended victim was, knew any of this, right? No, Your Honor. There is no evidence? So there's no evidence that he was aware of the altercation. So we don't have testimony from, say, another prisoner saying, oh, yeah, I was with Kisar and I overheard yelling. And there's no direct evidence that he even knew the intended victim. There's no Arizona law requirement that he know the intended victim. Of course, by law. Well, suppose he had, all of this had happened and, in fact, nobody had been stabbed that afternoon and three weeks later somebody was stabbed. I think that evidence would be a closer case. Two years later somebody was stabbed. I'm sorry again, Your Honor. Or two years later, some, a completely different person on an issue that hadn't even arisen yet was stabbed. That would be a closer case because I think the fact that the stabbing occurs so quickly is. On your theory that it doesn't matter that you know that there's going to be a stabbing, why does it matter? Well, no, I think he does need to know that there was. I mean, you don't need to know who the victim is. Correct. So if the victim hadn't even materialized yet. I mean, this guy just wanted a knife and three weeks later he has a fight with somebody and stabs him. Correct. He just needs to know what the knife is going to be used for. Somebody bothers me, I'm going to stab him. Right. Nobody's bothered me yet, but three weeks later somebody bothers him and he stabs him. I mean, I don't think if you said, hey, give me this knife for protection and maybe I'll stab somebody with it. Maybe I'll stab somebody. No, that's not. I don't really understand what it means to say you don't have to know who the victim is. Sure. So if I walk up to somebody and say, hey, give me a knife so I can go stab someone. I'm not going to tell you who it is, but I'm going to go use this knife and stab someone right now. That's conspiracy to commit assault. Even if you don't know who the victim is. And that's a sensible rule. And so that's essentially the facts that we have here. But how is it the facts you have here? I mean, obviously he didn't he was pantomiming knife, but there's since Kaiser on the evidence had no clue that there was any particular, even if there was a victim of mine at that point, he goes like this. I don't know. That's what's supposed to prove that he has a specific plan to stab somebody? Well, so there are two answers to that question, Your Honor. One, of course, is we know he made a stabbing motion. We don't know what the motion was. So, you know, he could have made a motion like this. He could have made a motion like this. The jury is the one who saw that, so it's hard to evaluate exactly. I thought we did know. I thought it wasn't pantomimed or something. My understanding is the they just said, so I see you're making a stabbing motion. Is that correct? And then the witness said, yes. He knows to stab somebody like that. So. And so. It's not a stab. No, of course. So we know the guard was stabbed in the neck in this case, and so we just don't know what exactly what the motion looked like. It could have greater or lesser probative force depending on the way the jury looked at it. The second answer to Your Honor's question, of course, is that Kaiser's answer to the request for a knife, he says, well, are you sure about this, homeboy? Or, excuse me, well, are you sure about this, how much time you got, homeboy? And proper answer is, it don't effing matter. I'm a career criminal anyway. So, I mean, that shows that Petitioner knows that he's not going to hide this knife under his mattress. He's not going to. Why does it show that? Well, a reasonable jury could infer that this shows that Petitioner knows Kaiser is going to go out and do something with this knife that could incur a significant fee. But it's a felony to have the knife. Pardon me? Isn't it a felony just to have the knife? It is. It's a Class II felony. So I don't understand why that implies anything. Well, and certainly, certainly it's not unreasonable to imagine that maybe he was that that piece of evidence taken alone could be given an innocent interpretation. But, of course, we have to view the evidence as a whole. It's a very interesting case, because it really says, you know, what can you – what is a legitimate inference from a statement that has – somehow you have to get the more adverse meaning out of it from something. In other words, if there are two meanings to what you're saying, do you need some reason to infer and nothing to mediate between them? There's nothing in the facts that says it's one rather than the other. Can the jury just choose the more adverse one because it feels like it? I mean, if it's really – if you're – if it's really a case where you're in – the jury's in equipoise, the evidence really could be – I'm asking – I mean, I'm asking, you know, what to me is an intellectually interesting question, right? I'm not asking whether the jury's in equipoise. I'm saying, all right, you have this statement, for example, about Homeboy, you know, which says do you want to get more time, okay? He could get more time if he just wanted the knife, just to have the knife, and he could also get more time if he wanted to have the knife to stab – to stab – to commit an assault, a particular assault, either way. There's nothing in the facts that says which one of those two it is, is there? I think the only thing is the facts is the remaining circumstantial evidence. So the fact that he's asking for a knife while making a stabbing motion, the fact that the stabbing occurs immediately on the heels, within hours of him asking for the knife, the fact that after – after the stabbing happens, Petitioner tells one of the – So in other words, you're saying the jury could infer from the fact that this guy did stab somebody that Kaiser knew that he was going to stab somebody? No. So I think that's circumstantial evidence that he would – Of what? Of something that Kaiser knew? Well, so if you – if – I mean, so I understand that, like, post hoc rationalization is not enough, but so we know Kaiser – we know Kaiser's in the same building. We don't know where he is in that building. So as you were discussing earlier, Your Honor, there's no evidence one way or another whether he's in earshot or not, or no conclusive evidence whether he knows exactly what's going on here or not. No conclusive evidence, no evidence. Whether he's – whether he's within earshot before – Right. That's correct. That's correct. Not no conclusive evidence, no evidence. Correct. No. No. Well, and the reason I say no conclusive is there actually are prisoners who testify that, oh, we were playing P-knuckle with Kaiser, that sort of thing. The jury could reasonably discount that evidence. So that's why I qualify that, Your Honor. What about the statement – what, if anything, can we draw from his statement later to the guy who testified that, don't say anything? It's – it's circumstantial evidence, Your Honor. I will concede it's not conclusive. But if it were really the case that he thought that this knife was just going to go into – be hidden under Cropper's mattress or something like that, you might expect somebody in that situation to say, oh, wow, I wasn't expecting that. Oh, no, he ended up stabbing somebody. I had no idea that was going to happen. Granted, it's – it's some circumstantial evidence. Well, at that point, he knew that he had stabbed somebody, right? Correct. Or likely. Likely. And he knew that – I mean, for all he knew, he didn't actually know whether the – I suppose whether the – or we don't have any evidence to know whether he knew that whether the knife that was being used was the knife that he had directed Bryce to get or whether – it turned out it wasn't, but he didn't – he could have thought it was the knife that he told Bryce to get. Right? That's correct. And so he certainly had a reason to not want to be connected to this knife. No, that's correct, Your Honor. And that's – that's another potential reasonable explanation or another – you know, another potential inference that could be drawn from the evidence. But, of course, the evidence must be considered. I still have the same – so I have the same question again. I mean, if there are two – if the statement has – I mean, what allows you to draw a jury or a fact finder to draw an inference from a completely ambiguous statement, which is the more adverse one rather than the less adverse one? So – I mean, is it just because I feel like it or what? If you have a completely ambiguous statement taken in isolation, I don't think a jury could reasonably infer one way or another. But that's simply – Because there are – because there are three different things? Is that –  Because we have multiple statements here. And when those are all viewed together in the light of the record as a whole, those support a reasonable inference for a certain – That's what juries do. I mean, it's very rare that there's a case where all of the evidence is presented straightforward and comes to only one conclusion. Correct, Your Honor. Correct. That's what fact finders do, is they look at all the facts. They look at the circumstances. We're in a prison culture, not, you know, at a debutante ball. And so they look at all of those circumstances to determine what the reasonable inferences are. And do we get to go behind that under IPPA? No, I don't think you do, Your Honor. Your Honors, I see my red light is on. It is. And thank you very much, Your Honor. Thank you, Your Honors. We'd ask that the support judgment be affirmed. We'll give you one minute in rebuttal. I just wanted to attempt to answer the Court's question. In the case of Juan H. at page 1277, the Court says a reasonable inference is one that is supported by a chain of logic rather than, as in this case, mere speculation dressed up in the guise of evidence. Juan H. is very analogous to this case. The defendant there, he knew his brother was angry. He knew his brother thought these people had shot at their trailer, and he knew his brother grabbed a shotgun and went outside with him. However, the reason it was reversed is he didn't know his brother intended to shoot at those people, that he actually killed somebody and attempted to murder somebody. He had no idea of the planned assault, even though he knew his brother was angry and had a shotgun. I would like to ask a question. When you think of the stabbing motion, what does that imply in terms of the use that was to be put of the knife? I don't think it implies anything. I think it implies they couldn't hear very well through the door, and he was trying to avoid saying the word knife, and he just was trying to explain what he wanted. I think that's pretty much it. I think anything more than that is speculation. Is there any evidence of that? Pardon? Is there any actual evidence of that? I mean, now aren't you speculating? I'm sorry. I misunderstood. Speculating about whether he could hear or not? Well, there was evidence that the door was solid and that there was a long, skinny window that was 5 inches wide and they were talking through it. Were they talking through vents? I can't remember. Between the two cells, but not between the cell and the hallway where Mr. Kaiser  So unless the Court has any other questions. Thank you both very much. Thank you. And we are adjourned.  Thank you.
judges: Bucklo, Berzon, Rawlinson